The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Good morning, counsel. As you'll notice, we're short one member of the court, Justice Kavanaugh, had an unavoidable emergency that he's had to take care of and is not going to be able to be present with us today. He will, however, listen to the oral arguments and will be part of the discussion at some point in time and deliberations before we render a decision. So we'll call as our next case 4-22-0006, in Ray C.W., a minor, people of the State of Illinois, Appalachee versus C.W., Appalachia. Could counsel for the appellant please state your name for the record? Salome Kiwara-Wilson. Thank you. And could counsel for the appellee please state your name for the record? David Manson. Thank you. Ms. Kiwara-Wilson, you may proceed. Thank you, Your Honor. May it please the court, counsel, my name is Salome Kiwara-Wilson and on behalf of the Office of the State Appellate Defender, I represent C.W. Section 3-5, subsection C of the Sex Offender Registration Act allows a juvenile who has been, who is required to register as a sex offender, in this case for life, to petition for the termination of the registration requirement five years after it's ordered. Under subsection D, termination of the registration requirement is granted if the court finds that a juvenile poses no risk to the community by a preponderance of the evidence. In this case, C.W. pleaded guilty to three counts of aggravated criminal sexual abuse and was sentenced to a term of probation in order to complete sex offender treatment. The then 17-year-old was then required to register for life as a sex offender. C.W. successfully completed probation and sex offender treatment and five years and eight months after his registration requirement was ordered, he filed a petition to terminate it. He then presented evidence on the factors that are supposed to be considered under the statute, showing that he no longer posed a risk to the community. He included a sex offender evaluation, which concluded he was a low risk to re-offend, which is the lowest category that can be given to someone who is being evaluated. In reviewing the statutory factors, five of the six enumerated factors weigh in favor of granting this petition, starting with the first factor, the risk assessment provided by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act. C.W. presented a report from Dr. Reynolds, who also testified during the hearing, and he opined that there was no public safety benefit to having C.W. continue registering as a sex offender because, again, he was a low risk to re-offend. The doctor concluded, sorry, the doctor's conclusion came after he spoke to C.W., conducted testing and also had him answer some questions. The conclusion he arrived at that C.W. was a low risk to re-offend was in line with two other reports from ABC Counseling that concluded the same thing before, even before C.W. went through sex offender treatment. In rejecting Dr. Reynolds' opinion, the court in this case relied heavily on an outdated approach to sex offender treatment, even for minors, because C.W. continues to insist that he is innocent of the offenses to which he pleaded guilty. So he never has acknowledged that he was guilty of the offenses charged? He maintains his innocence, but he pleaded guilty. So, yes, he has not. When did he plead guilty to? Three counts of aggravated criminal sexual abuse. What was he charged with? Two counts of aggravated criminal sexual abuse and one count of aggravated criminal sexual assault. What could his sentence have been for the aggravated criminal sexual assault? If his case was transferred to criminal court, Your Honor, because there was some discussion that the state could have done that, but chose not to, he could have been sentenced as a class X offender. So 30 years maximum. So he took advantage of the plea, which got him probation. Yes. He's acknowledged at the time of the plea that he understood that he would have to register for life. Yes. And so now he wants more. He does not want more. He's simply taking advantage of the opportunity given to him under the statute as a juvenile offender to petition to have his registration requirement terminated. This was not the fact that the requirement that he registered as a sex offender was not part of the plea deal. So he's not asking for something in excess of what he bargained for. This sex offender registration... In fact, he is, because didn't the judge admonish him that you understand that you're going to have to register as a sex offender for life? And he said, yes. Yes. But that comes as a, it's structurally automatic. It had nothing to do with his sentence, so to speak. So he wasn't bargaining away his rights to petition under the statute to have that registration requirement removed. So basically the state gave up a class X felony with a mandatory minimum of six, max of 30 to a defendant who not only does not accept responsibility for his offenses, but now wants to get out from underneath his registration requirement. So this... And has only served a sentence of probation. But that's... So it's two different considerations. The state... I'm sorry. Go ahead. Ms. Wilson, I do appreciate what you're trying to do, but I would appreciate if you could maybe answer the question yes or no. I'm sorry. Could you... The state gave up a class X mandatory minimum of six to 30. Yes. Was there any problem with the evidence in the case? I don't know because they never presented it. CW had presented... Was there any indication at the time of the plea that the victims were unable to testify or it wasn't likely they were going to be able to present evidence or... The defense did present a report from an expert who opined that there were problems with the manner in which the children were questioned when they first made their allegations. So the issue of whether or not... Was the state indicating at the time of the plea that the reason they were giving the defendant such a deal was because they had problems with their proof? No. The state indicated that they wanted to... That they entered the plea deal to save the children the anguish of a trial. Sure. Yes. Okay. So the state has given up a mandatory minimum of six to 30 on a multiple victim offender who gets a guarantee of probation and now wants to get out from underneath the registration requirement. So essentially the state probably shouldn't have given him the deal in the first place knowing that he's going to deny that he's committed the offenses and now wants to even get out from underneath his registration requirement. So to answer your question, yes, the terms of the plea were that the state would... And I will just back up and just say that the court... The victim is an adult at the time. They said that they charged it the way they did. So he would stay in juvenile court because that's what including the victims wanted to do. But because there wasn't a chance that he could have been charged as an adult is why I am going to accept the premise of the question that he could have been sentenced to six to 30. But the plea deal with the state only extends to the terms of he would plead guilty to save the victims having to go to trial. And then he would get probation for two years and be required to attend treatment. And then the registration is separate from the plea deal. The registration comes as a matter of statute and is not part of the punishment. So CW coming five years later to petition off the registry, he's not trying to get more than he bargained for because the statute allows him to do this regardless of the plea deal. So either the state was ignorant of this or they were suckers for getting the deal in the first place. I cannot speak to the state's motives at the time. But go ahead. I'm sorry. I'm taking up your time. I apologize. Go ahead. That's OK. Your Honor. I'm happy to answer any questions you have. And the CW has never said that he was he was not playing games, so to speak, during the plea negotiations. He's never said that he did this. He's always maintained from the beginning that he was innocent of these charges. So at the time of the plea deal, the state was well aware that that was the situation. And so the court in considering, again, back to the fast factor, Dr. Reynolds testimony in his report, the court was relying on an outdated approach to sex offender treatment. The court was relying on the fact that or rather was commenting on the fact that CW had not accepted responsibility in terms of saying he did this because he continued to insist he was innocent. And that that means he worked around his sex offender treatment. But that is not what the record shows. The record shows that the people who provided the treatment were aware that he continued to insist he was innocent and that according to Dr. Reynolds, a respondent's continued insistence on innocence does not affect his risk to reoffend. And that was the only testimony that was presented during the hearing. The state did not provide counter evidence on that fact. And I acknowledge that the trial court is not required to believe everything that Dr. Reynolds says. But the court cannot reject his testimony when the state presents nothing to counter it. The Dr. Reynolds testimony was expert testimony. What do you mean the state can't or the court can't reject it? Why is the court does that mean the court is required to accept it? No. But if the court rejects it, it has to be based on something that was presented at the hearing. So it can't be the court didn't find it believable and persuasive. That's that is not what the court the court did not find that Dr. Reynolds was not credible. The court was relying on its knowledge or its yes, its knowledge and experience that sex offender treatment required somebody to acknowledge that they were guilty of the offenses. But Dr. Reynolds was explaining that the advances in treatment have found that that is not it's not a factor that should be considered. And he reviewed the treatment that CW went through and affirmed that that is the that was consistent with the kind of treatment that Dr. Reynolds provided to his own patients. So unless there was something contrary to that, the court was simply relying on evidence that was not before it and even comparing the case to B.C. where B.C. acknowledged his his guilt. So the second factor is the sex of the court just found the doctor to be not credible. The court did the court did not make that finding on the record. OK, yeah, I see what you're saying. Yeah, so the second factor under the statute is the sex offender history of the adjudicated juvenile delinquent. And in this case, CW did not have any other adjudications, sex offense or otherwise. He never had any after after these and he had no other allegations against him after the conduct in this case. So this was a factor that weighed in favor of granting his petition, just like the first factor. Third was the evidence of his rehabilitation. Here, CW presented ample evidence of rehabilitation. He successfully completed probation, successfully completed sex offender treatment. He completed high school and had some college and he started a business, too. In fact, one when he was, I think, 13 or thereabouts. And then then he parlayed the success of that business to the business that he was currently running at the time this petition was being heard. He employs 15 employees and five contractors, salespeople work for him. He presented many letters from community members who attested to his character, called him not a threat to the community, a valued citizen and a good human being. And so under this third factor, he presented enough, you know, enough evidence. The the the standard of review or rather, he has to present evidence by a preponderance of the evidence that he no longer poses a risk. And again, this was a factor that weighed in favor of granting his petition. The fourth factor is the age of the adjudicated juvenile at the time of the offense. In this case, CW was 15 at the time the allegations were made, although the case was resolved when he was 17. He had no prior criminal history at the time of the offense. No subsequent criminal history except for the probation violation with the traffic offense. And he had a he showed a great capacity for rehabilitation. He's always attended his which goes to the next factor, but he attended mental health treatment in addition to the sex offender treatment, even though it was not offered by the court or other ordered by the court. And he continued to seek that treatment even when he had finished his term of probation. In fact, the court called that a mature approach because he saw that he needed mental health and he sought it. So again, that was a factor that weighed in favor of granting his petition. The only factor that did not weigh in favor of mental health, that the mental health help that he said he needed. As I recall, it was that he was suffering from some form of post traumatic stress syndrome for being essentially the victim of this horrible accusation and his involvement in the process didn't have anything to do with any sex offender status that he may occupy. No. Well, I see what you mean. Yes, he was seeking mental health treatment because of his because of this. His involvement was so traumatized by all of this. The doctor who evaluated him found that he did have PTSD, but that the requirement or the fact that he sought mental health treatment is still a factor that weighs in his favor because he sees a problem within himself that he needs addressed and he seeks he seeks the help he needs. So if he has to resolve any feelings that he has about having to go through this criminal process, he identified it and sought treatment for it, which is why the circuit court found that if he's a sex offender and he's getting sex offender treatment and he decides to go get mental health treatment for kleptomania, what effect does that have on his sex offender treatment? So no effect on the sex offender treatment. Well, it's the same thing here. He's claiming he needs mental health treatment because he was so traumatized and victimized by this process. So what in the world does that have to do with his sex offender treatment? It is a factor that is enumerated in the statute for the consideration of his mental health history. And in this case, it doesn't matter whether it relates to it can relate to it can relate to his to the finding of no risk in that. So as an example, not my client, if somebody is extremely upset about having to be taken through this process and has feelings like your client. No, no, no. Like in a in a in an irrational anger type situation, they may reoffend because those feelings are not resolved. So it would be wiser for that person to seek mental health treatment that allows them to resolve those feelings and to accept the situation they're in. My client, before he ever reached such lengths of the person in the example, sought mental health treatment, was able to go through it and continue to seek it as he needed it to deal with frustrations, even generally in life. So, again, that's a good thing to show that he's not a risk to the community, not necessarily connected to his past offense. But going forward, which is all the statute is asking, is he a risk to the community? And again, this factor weighed in favor of finding that he was not. This was one of the factors that the court, in fact, applauded his approach by saying that it was a mature approach again for his social history. He had friends. He had he was a role model. I think one of the letters noted that he had a role model to one of the the author's children, and he was well regarded in his community. I want to quickly touch on the other factors that the court deemed relevant as I run out of time. And we argue that the court considered three factors that had no relevance to whether or not he posed a risk to the community. One was the age of the victims, his denial that he committed the offense, which we've discussed, you know, a little bit, and that he was surrounded by people who did not appear to hold him accountable in each of these three instances. These factors had had no relevance as to whether or not he posed a risk to the community for the he's continued plea. He's continued assertion of innocence and that he was surrounded by people to do not hold him accountable. Those two factors were linked because, again, it goes back to whether or not he says he's guilty of these offenses. And as Dr. Reynolds said in his testimony and in his report, his CWS continued insistence on innocence has no relevance on his risk factor. He is still a low risk to reoffend the age of the victims. The court considered this in terms of because it had been considered in the other case in that case, the court considered that the age of not allowing him not allowing the T.J. D. defendant of the registry, while his victims are still young, protected the victims because then they did not have to disclose to anyone else. I still maintain that at the outset, the age of the victim should not be considered because it's not considered in the statute when the court when the legislature included a victim impact statement. But furthermore, in this case, it can be distinguished from T.J. D. because here the victims had already disclosed to others in their circle the circumstances of this offense. I see that I am out of time. I hope you will have an opportunity in rebuttal. Thank you, Mr. Manchin. May it please the court, counsel. In this case, the trial court expressly considered each and every one of the factors listed by the statute, expressly referred to the testimony of the witnesses, referred to the assessment by Dr. Reynolds, and concluded based upon all the evidence that he could not find that there was no risk. Respondent's entire argument is basically an invitation to this court to act as a new fact finder and to go through each individual factor and find for itself whether or not this factor should have favored or not favored termination of the registration requirement. That is not the standard of review. Was the trial court's decision manifestly erroneous so that the opposite result was clearly apparent? And I submit that the opposite result is not clearly apparent. The trial court expressly stated that he did not found that he could give little weight to Dr. Reynolds' opinion because of several problems with his analysis, including the He testified as the materials he normally considers in hearing, making a decision and admitted he did not have all those materials here. He did not have the police reports. He did not have the victim's reports. He did not have information regarding what treat the treatment programs or protocols that were used upon the defendant in his prior in his sexual offendant treatment. So that the his opinion as to no risk or little risk, I should say, was based upon slanted, incomplete and inaccurate information. And on that basis, the trial court could properly say that it was not entitled to much weight. Did the court make that observation or shouldn't have made that observation in order to diminish the effect of that testimony? The trial court did make a statement. I believe it's on page. I forget. I believe it's page 607. I don't have the exact page number. But the risk of sex. Let's look at the factors. First factor is the risk assessment performed by evaluator. I think there are circumstances that diminish the weight to be given the sex and federal evaluation. Then refers to the defense respondent being focused on convincing. He was not convincing his attitude of superficial cooperation and impression management. So the trial court did expressly refer to different factors that he relied on in saying that the doctors of pain should be given a little weight. And the trial court noted that a testimony as to low risk does not necessarily mean that there is no risk. And he just simply found that based upon the totality of the evidence and his appraisal of all the evidence was reasonable and was based upon the evidence. His concern that the defendant worked around his treatment program was valid. All the reports showed that the defendant completed a test program but had not discussed risk aversion, had not completed all the materials given to him. And to say you completed a program when you have skipped large portions of the programs is problematic and it was problematic to the trial court in this case. And I think that was a reasonable decision. With regard to the admission of guilt, I think it does have a bearing on this. Even if the treatment modality is no longer based upon admission or denial of guilt, the admission of guilt does go to the rehabilitative ability or potential. That has long been recognized by the courts as far as in sentencing, for example. So to say you can't consider it for purposes of determining whether there is no risk I think is improper. This is especially true since even Dr. Reynolds stated that a person's willingness to accept responsibility was an important factor to be considered and that he considered that he found the defendant to be at low risk despite his denials. So even the doctor does put some weight to the denials or the failure to accept responsibility. Plus you have the fact that the defendant is now, excuse me, the respondent is now claiming he pled guilty because he was threatened with 45 years if he did not plead guilty. So this all goes to his credibility and his veracity and I think that is a valid concern for the court since the doctor's opinion is based on a large degree to what the defendant is telling him. And if you can't believe the defendant or shouldn't believe the defendant, how much weight can you give to an opinion that is based on what the defendant said? With respect to the victim's age, the case of T.J. Dee that's cited in both briefs especially said that the age of the victims can be considered. I think that since the statute allows the court to consider victim impact statements and anything he considers relevant that the consideration of the age is proper under T.J. under that case. I would make an observation. Respondent says that we can consider B.C. even though it's completely factually distinct but we can't consider the other case because it is also not factually consistent. The defendant's whole reliance on B.C. is that it is analogous to this case. Analogy means that it is consistent with. And the only consistency between B.C. and the instant case is we have an expert who says that the respondent or juvenile is at low risk. Every other fact in the cases is different. The respondent in B.C. admits guilt. The timeline was longer as far as how long he had been in treatment and how long since the conviction. So to say that this is analogous to B.C. and that B.C. should be followed should be rejected because there is no analogy between the two. They are completely different cases. And the analysis in B.C. simply cannot be applied here given the distinguishing features which the trial court noted when it was making its decision. The trial court made I believe it was about eight pages of findings going through each and every factor. The risk assessment, the respondent's age, his criminal background and noting his background, the trial court referred to the fact that respondent's probation had been revoked at one point before he completed it. So the factor of his criminal history was considered. As far as considering the people around him that don't hold him accountable, again the statute says the court can consider anything it finds relevant. Here respondent had presented testimonials from his friends saying that the defendant is a great guy and he should not be required to register. But when these same people are, as the trial court said, drinking the defendant's, respondent's Kool-Aid, that he is the victim in this case, how much weight do you give to those opinions when they are viewing respondent as the victim? As Justice Darma said, his treatment for stress because he feels he is a victim really does not have much bearing on whether or not he presents no risk. But the trial court did consider it and said that that was a mature decision. So again, respondent is simply asking this court to act in a manner that he sees fit as a second fact finder. And that is not the standard of review. If there are no further questions, I will extend my brief with respect to the. All right. Thank you, counsel.  Thank you, your honor. I will start by noting that the manifest weight of the evidence standard of review is not a rubber stamp. This court can still look to the evidence that was presented and see whether or not the court's decision after reviewing the evidence by a preponderance of the evidence was the correct decision. CW is not asking this court to serve as counsel says as a second fact finder. There is still significant work that this court can do under the manifest weight of under the manifest weight standard. The state also refers to the evaluations that were completed on CW as presenting slanted information. I believe that's in reference to the ABC evaluation ABC counseling report. But it's only slanted in the state's opinion because again CW continues to insist that he is innocent of the offenses. But that doesn't mean that the evaluation is slanted. The state cannot show that that was not a true evaluation, that he presented a low risk simply because he continues to insist his innocence, his innocent rather. What about the question that Justice D'Armand raised? We judges have long sat at sentencing and it's in the decisions of public courts. I think it's always been that the first step often in rehabilitative efforts is for a defendant to admit I'm sorry what I did. It was wrong. I'm prepared to accept my punishment. I'm also prepared to accept efforts to address my difficulties via mental health or other problems. And as a sentencing judge, if I believe this, I would give this some weight certainly that I would not give in the absence of any such representations by the defendant I was sentencing. What you're arguing to us it appears is that this psychologist says some literature says this is so important in this regard in a case like this and therefore the trial court was wrong to consider the absence at all. That doesn't seem to be a persuasive argument to me. What am I missing? So I think there's three responses. The first is you are absolutely correct. In the context of sentencing, a court can consider a defendant's refusal to accept guilt as I believe the language used in those cases is that he's an unmitigated liar who cannot be rehabilitated. So my first response would be we are not in the sentencing context. We are in a situation where my client pleaded guilty. He was sentenced. That phase of this has passed. Which brings me to the second response. When somebody pleads guilty, they can do so even when they are completely innocent. And the Supreme Court and multiple appellate courts have considered and accepted that fact. I think the Illinois Supreme Court more recently in People v. I understand that, but in a case like this, if I am correct in my recollection, the trial court rejected that. Didn't the court say I'm convinced from this evidence, the defendant did it, and therefore his adhering to this notion of gee, I didn't do it, I'm not responsible, I'm a victim is counterproductive if he wants to prevail on this notion? Which brings me to the third point. The court can opine, or rather the court can require him to, cannot, sorry, require him to accept guilt in this context without considering whether that affects his risk assessment. Dr. Reynolds' opinion here is critical. Whether or not CW continues to insist that he is innocent has no risk assessment. Let's go away from the sentencing context for a moment. We judges, like we told jurors, can consider our common experiences in life, and one of the common experiences we all have is dealing with or reading about people who are alcoholics, which is a fairly regrettably common thing, and one of the aspects of it, I recall anyway, is you can't overcome your alcoholism until you acknowledge it. You have to say I'm an alcoholic, I need help, and the same thing with being a drug abuser. I'm abusing drugs, I need help, and the stories are legion, and the people say I don't need any help, it's not that serious, I can handle my drinking. When they can't, then they don't get any better. Why wouldn't that be a comparison to your client's situation? I'm sorry, I'm out of time. Go right ahead and answer the question. Because my client, and again, this goes back to people versus reading, as somebody can plead guilty to an offense without having committed the offense. So if my client insists, my client cannot say and then get help for something that he believes he is innocent of. So in the context of a drug user or an alcoholic, if I'm not really a drug user or an alcoholic, no amount of me saying that I am would cure me of something that I do not have in the first place. The third party views your denials as just wrong. You are a drug user and alcoholic and your denials just mean that you aren't going to respond to any help offered to get better. Isn't that essentially your client's position? No, my client has successfully completed sex offender treatment and probation, and there was no contest to that finding that he had successfully completed those, I mean, sex offender treatment. So in a way, he's already passed the hurdle of the alcoholic or drug user in your example. Ms. Wilson, I realize your time is up, but I do have one follow-up question from that. If I understand your argument correctly in this regard, since Dr. Reynolds testified the way he did and that that testimony was not refuted and that the state didn't present any other contrary expert testimony, what you're basically saying is that regardless of what the state is doing about similar circumstances, none of that can be considered. You're to take Dr. Reynolds, even if we completely disagree with Dr. Reynolds' assessment, since there's no contrary evidence and he's testified as an expert, we're bound to accept his representations. As to that first factor, yes, the court is not, and it's the law in Illinois, the court cannot bring extraneous evidence into this case and rely on it. So the court cannot rely on the expert testimony in B.C. just as it can't rely on its own experience that CW did not have a chance to counter. Here, the only evidence was Dr. Reynolds' evidence, and on that first point, the court has not contradicted that CW's continued insistence on his innocence did not affect his risk evaluation, because again, Dr. Reynolds went into that risk evaluation assuming CW was guilty. So for all intents and purposes, CW was guilty, Dr. Reynolds' evaluation comes from that position, and nothing about CW's insistence on his innocence changes that. All right. Thank you very much, counsel. Thank you. All right. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.